IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ERICA CARDENAS,** | Case No. |
| *Plaintiff,* | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| **INFUSION CAPITAL GROUP LLC**, | |
| *Defendant.* | |

## CLASS ACTION COMPLAINT

Plaintiff Erica Cardenas ("Plaintiff Cardenas" or "Cardenas") brings this Class Action Complaint and Demand for Jury Trial against Defendant Infusion Capital Group LLC ("Defendant" or "Infusion Capital Group") to stop Defendant from violating the Telephone Consumer Protection Act ("TCPA") by making telemarketing calls to consumers without consent including calls to phone numbers that are registered on the National Do Not Call registry ("DNC") and to consumers who have expressly requested that the calls stop. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Cardenas, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including an investigation conducted by her attorneys.

### PARTIES

1. Plaintiff Cardenas is a resident of Chula Vista, California.

1

2. Defendant Infusion Capital Group is a company registered in New York, New York. Defendant Infusion Capital Group conducts business throughout this District and throughout the US, including California.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant because the Defendant is headquartered in this District and places telemarketing calls to consumers from this District.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant is headquartered in this District.

## INTRODUCTION

6. As the Supreme Court explained at the end of its term, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

2

9. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10. According to online robocall tracking service "YouMail," 4.7 billion robocalls were placed in November 2024 alone, at a rate of 157.6 million per day. www.robocallindex.com (last visited December 31, 2024).

11. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

14. Infusion Capital Group provides working capital to businesses throughout the US.

15. Infusion Capital Group places solicitation calls to businesses that may require working capital.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

3

16. In job postings, Infusion Capital Group regularly references cold calling as a job requirement:



**Infusion Capital Group LLC**

**Inside Sales Representative**
New York, NY

**About Us:** Infusion Capital Group is a dynamic financial services firm located in the heart of New York City's financial district. We specialize in providing innovative financial solutions to our clients, helping them achieve their goals and grow their wealth. Our team is comprised of talented professionals who are passionate about delivering exceptional service and results.
**Position Overview:** We are currently seeking motivated individuals to join our sales team as Sales Representatives. In this role, you will be responsible for generating new business opportunities, building relationships with clients, and promoting our range of financial products and services.
**Responsibilities:**

- Prospect and qualify potential clients through cold calling, networking, and other lead generation activities.
- Conduct thorough needs assessments to understand clients' financial goals and objectives.
- Present and explain our products and services to clients, addressing any questions or concerns they may have.
- Develop and maintain strong relationships with clients to ensure their satisfaction and loyalty.
- Meet or exceed sales targets and performance metrics on a weekly and monthly basis.

---

[3] https://www.glassdoor.com/job-listing/inside-sales-representative-infusion-capital-group-llc-JV_IC1132348_KO0,27_KE28,54.htm?jl=1009526357324

> # Inside Sales Representative
>
> **Infusion Capital Group LLC** - New York, NY
>
> posted 3 months ago
>
> Full-time - Entry Level     New York, NY
>
> ✓ Track Jobs with Teal      ↗ Apply
>
> ## About the position
>
> The Inside Sales Representative at Infusion Capital Group is responsible for generating new business opportunities and building strong relationships with clients in the financial services sector. This role focuses on promoting a range of financial products and services while meeting sales targets and ensuring client satisfaction.
>
> ## Responsibilities
>
> - <u>Prospect and qualify potential clients through cold calling</u>, networking, and other lead generation activities.
> - Conduct thorough needs assessments to understand clients' financial goals and objectives.
> - Present and explain our products and services to clients, addressing any questions or concerns they may have.
> - Develop and maintain strong relationships with clients to ensure their satisfaction and loyalty.

[4]

17. Infusion Capital even calls consumer phone numbers like the Plaintiff in this case who does not own a business.

18. Infusion Capital Group does not remove phone numbers from its call list.

19. Former Infusion Capital Group employees have complained about the cold calling they have had to engage in, with some employees complaining that they were instructed to continue calling the same people who told them to stop calling before, including:

---

[4] https://www.tealhq.com/job/inside-sales-representative_c6a131a1-44fd-410b-a209-3014157be146

5

1.0 ★☆☆☆☆ ⌄                                                                  Nov 6, 2023   •••

### Infusion Capital is a telemarketing sweatshop.

🕵 Funding specialist

Former employee, less than 1 year   📍 New York, NY

✗ Recommend    ○ CEO approval    ✗ Business outlook

**Pros**
You get to tell people you work at wall street.

**Cons**
They basically tell you to spam call these business owners 700-1000times day straight up harassing them despite them telling you to stop calling them. Its a bad tactic and NOT a reputable company. They arent playing by legal call metrics. When people tell you to put them on the DO NOT CALL list, the managers tell you to call them again tomorrow because and I quote "theyll say no today but yes tomorrow". They don't train you whatsoever, they just give you a script to stick to once you're hired. After a while there you realize you're pretty much scamming business owners for commissions. And the people there are just despicable, heavily political and racist. Unless you're a white republican male, I doubt this is the environment for you. One of the "managers" there told me that they pride themselves on not having a HR department so they can say whatever they want (mostly racist and derogatory words among themselves and clients/prospects). All they emphasize is hustle culture but they dont care at all about an employee's well being whatsoever. They trick you into believing you can make a lot of money which in fairness you can but they dont tell you what it takes to do that, until you make your first commission, you're essentially FREE labor for them. Going 8 hours a day, 5 days a week calling the same people and saying the same things over and over with 90% of people telling you to stop calling them is not a proper sales job, its a harassment job in a sweatshop. Unless you want to dial the phone a 1000 times a day with no base salary and a slim possibility to make a livable wage. [5]

---

[5] https://www.glassdoor.com/Reviews/Infusion-Capital-Group-Reviews-E8324607.htm



20. As a result of its telemarketing activities, Infusion Capital Group has had 2 TCPA-related cases brought against it – Tosin Balogun v. Infusion Capital Group, LLC (5:2023cv00761) and Callier v. Infusion Capital Group, LLC (3:2021cv00181).

21. To avoid further liability for its unlawful telemarketing practices, Infusion Capital Group does business using the name High Rise Capital, as per Plaintiff's experience.

22. A potential employee for Infusion Capital Group posted a comment on Reddit about how they applied for a job with High Rise Capital, but it was actually with Infusion Capital Group:

---

[6] https://www.glassdoor.com/Reviews/Infusion-Capital-Group-Reviews-E8324607.htm



23. The High Rise Capital website contains the exact same template and look as Infusion Capital Group, and it even contains direct references to Infusion Capital Group:



24. Finally, the phone number for High Rise Capital and Infusion Capital Group is the same phone number:



---

[7] https://www.reddit.com/r/Devilcorp/comments/1f4czt8/infusion_capitalhighrise_capital/
[8] https://www.highrisecapital.org/
[9] https://www.highrisecapital.org/

8

[10]

25. Consumers and businesses have posted complaints online about unsolicited calls they received from Infusion Capital Group, including complaints from consumers who received additional unsolicited calls after telling the Defendant to stop calling, including:

- "Sale agent call. Inform them *my number is listed in the Do Not Call registry* and *requested to be remove from the calling list*. Agent requested bank statement and lots of personal information and refuse to accept 'No', 'please remove the number from the calling list', and kept deflecting request to be remove. SUPER UNETHICAL company and should be shut down by the SEC or any authority overseeing the business."[11] (emphasis added)

- "On 12/28/23 I received a phone call with caller ID ************. The caller said he was **** with Infusion and wanted to know if I was still looking for funding for my business. I answered politely, No, and *please don't call me again*. After I hung up, I blocked that number.On 12/29/23 I received a phone call with caller ID ************. I did not answer the call. When I listened to the voicemail message he said, This is **** with Infusion, **** ****"[12] (emphasis added)

- "This company calls me **** times a day. I've never requested funding for my businesses, *I've told almost 50 of these employees who call that I want to be removed from their list*. I've even started contacting them to speak to a supervisor or managing party, or someone who can do something other than curse at me as they hang up a phone. They are liars, scumbags, and have horrible time management if they are willing to contact uninterested contacts dozens of times per week. That's not persistent, that's absurdly inefficient and ineffective."[13] (emphasis added)

- "This company continues to call me and hang up almost every day. *When I call back and request to be taken off their calling list, they just hang up*. These are some of the phone numbers they keep calling me from. ************ ************ ************"[14] (emphasis added)

- "Infusion Capital calls me multiple times a day. *I have asked several times to be removed form their call list*. They have been rude, combative, mean, degrading. I

---

[10] https://www.infusioncapital.org/
[11] https://www.bbb.org/us/ny/new-york/profile/financial-consultants/infusion-capital-group-llc-0121-87152939/complaints
[12] Id.
[13] Id.
[14] Id.

- am going to be filing a complaint with the attorney general as well. They refuse to stop calling. It is highly annoying. This needs to stop. It is disruptive to business, and I will be contacting an attorney for lost time."[15] (emphasis added)

- "I cannot seem to get off of the call list. They call me every day, multiple times a day. *I have asked to stop receiving calls*. I have tried to call the number on the website to speak with someone outside of sales to no avail."[16] (emphasis added)

- "Infusion Capital calls me at least once a week despite me telling them to stop. *When I tell them to stop calling me, the person calling me will frequently use profanity*. When I tell them to stop calling me and I just hang up, they attempt to call back multiple times back to back. Today, I pretended to want money from them and had them send me an application so I could get more information on them. Once I received the application, I told ************************, whose title is "one of the Head **************" according to him, out of the ******** office that I have told him and/or others who have called me from their office to stop calling me on at least 7 or 8 other occasions and I need the harassment to stop. He hung up on me. PLEASE, I beg of you Infusion Capital, STOP calling business owners after they ask you to stop calling them. Not everyone wants bottom feeder loans."[17]

- 

26. In response to these calls, Plaintiff Cardenas brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

### PLAINTIFF CARDENAS'S ALLEGATIONS

27. Plaintiff Cardenas is the sole owner and user of her cell phone number ending in 5615.

28. Plaintiff Cardenas has owned her cell phone number for over 10 years.

29. Plaintiff Cardenas registered her cell phone number on the DNC on November 9, 2023.

---

[15] Id.
[16] Id.
[17] Id.

30. Plaintiff Cardenas uses her cell phone number for personal use only as one would use a landline telephone number in a home.

31. Plaintiff Cardenas uses her cell phone primarily to communicate with friends and family. It is also used to schedule personal appointments and for other household purposes.

32. Plaintiff Cardenas does not have a landline in her home.

33. Plaintiff Cardenas' cell phone plan is paid for by Plaintiff herself. It is not reimbursed by a business.

34. Plaintiff Cardenas pays for a Go Unlimited Verizon plan for her cell phone number.

35. Go Unlimited is a plan for individuals or families that offers unlimited data, calling and texting.[18]

36. Plaintiff Cardenas has never had her cell phone number associated with a business.

37. This phone number is not used in any business or marketing materials.

38. On January 11, 2024 at 9:10 AM, Plaintiff Cardenas received an unsolicited call to her cell phone from 619-413-9406.

39. When Plaintiff Cardenas answered this call, an employee said he works for Infusion Capital Group. He wanted to provide a quote for a business loan.

40. Plaintiff Cardenas told the employee that her cell phone number is registered on the DNC and that she does not own a business.

41. Plaintiff Cardenas told the employee not to call her back and ended the call.

42. As of February 2024, when 619-413-9406 was called back, an employee answered identifying the company as Infusion Capital Group.[19]

---

[18] https://www.wirefly.com/wireless-plan/verizon-go-unlimited
[19] Based on an investigation conducted by Plaintiff's attorneys

43. On August 22, 2024 at 2:47 PM, Plaintiff Cardenas received a 2nd unsolicited call to her cell phone, this time from 619-309-1329.

44. When Plaintiff Cardenas answered this call, an employee said that he was calling from High Rise Capital to offer a business capital loan.

45. Plaintiff Cardenas quickly ended the call.

46. On August 23, 2024 at 11:14 AM, Plaintiff Cardenas received a 3rd unsolicited call to her cell phone, this time from 619-309-1329.

47. When Plaintiff Cardenas answered this call, an employee said that he was calling from High Rise Capital to offer a business capital loan.

48. Plaintiff Cardenas told the employee that her cell phone number is not a business number and that her phone number is registered on the DNC. Plaintiff Cardenas asked the employee to remove her number from Defendant's call list and ended the call.

49. On August 26, 2024 at 9:59 AM, Plaintiff Cardenas received a 4th unsolicited call to her cell phone, this time from 619-309-1432.

50. When Plaintiff Cardenas answered this call, an employee said that he was calling from High Rise Capital to offer a business capital loan.

51. As with the previous call, Plaintiff Cardenas told the employee that her cell phone number is not a business number and that her phone number is registered on the DNC. Plaintiff Cardenas asked the employee to remove her number from Defendant's call list and ended the call.

52. On September 5, 2024 at 9:52 AM, Plaintiff Cardenas received a 5th unsolicited call to her cell phone, this time from 619-824-0792.

53. When Plaintiff Cardenas answered this call, an employee said his name is Greg and that he was calling from High Rise Capital.

54. Greg wanted to provide pricing for a business loan.

55. As she had done with the previous calls, Plaintiff Cardenas told the employee that her cell phone number is not a business number and that her phone number is registered on the DNC. Plaintiff Cardenas asked the employee to remove her number from Defendant's call list and ended the call.

56. Plaintiff Cardenas has never done business with Infusion Capital Group.

57. The unauthorized solicitation telephone calls that Plaintiff received from or on behalf of Defendant Infusion Capital Group have harmed Plaintiff Cardenas in the form of annoyance, nuisance, and invasion of privacy, occupied her phone line, and disturbed the use and enjoyment of her phone.

58. The calls also caused undue distress as Plaintiff was unable to get the calls to stop by asking Infusion Capital Group to stop calling her cell phone number.

59. Seeking redress for these injuries, Plaintiff Cardenas, on behalf of herself and Classes of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

60. Plaintiff Cardenas brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Infusion Capital Group called more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff.
>
> **Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Infusion Capital Group called more than one time on their residential telephone number, (2) within any 12-month period (3) for substantially the same reason Defendant called Plaintiff, (4) including at least once after the person requested that they stop calling.

61. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Cardenas anticipates the need to amend the Class definition following appropriate discovery.

62. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

63. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) Whether Defendant's conduct violated the TCPA;

(b) Whether Defendant placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

(c) whether Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

14

(d) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

64. **Adequate Representation**: Plaintiff Cardenas will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Cardenas has no interests antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff Cardenas and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Cardenas nor her counsel have any interest adverse to the Classes.

65. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Cardenas. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Cardenas and the Do Not Registry Class)**

66. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

67. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

68. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

69. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Cardenas and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

70. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Cardenas and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

71. As a result of Defendant's conduct as alleged herein, Plaintiff Cardenas and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are

entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

72. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Cardenas and the Internal Do Not Call Class)**

73. Plaintiff repeats and realleges paragraphs 1-65 of this Complaint and incorporates them by reference herein.

74. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf

17

the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

75. Defendant placed calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls.

76. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

77. Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up

to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing her attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Cardenas requests a jury trial.

DATED this 18th day of February, 2025.

                                        **ERICA CARDENAS**, individually and on behalf of all others similarly situated,

                                        By: /s/ Stefan Coleman
                                        Stefan Coleman (FL Bar No. 30188)
                                        law@stefancoleman.com

                COLEMAN PLLC
                11 Broadway, Suite 615
                New York, NY 10001
                Telephone: (877) 333-9427

                Avi R. Kaufman (FL Bar No. 84382)
                kaufman@kaufmanpa.com
                KAUFMAN P.A.
                237 South Dixie Highway, Floor 4
                Coral Gables, FL 33133
                Telephone: (305) 469-5881

                *Attorneys for Plaintiff and the putative Classes*